IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SERGIO LEAL, and all others | § | |
| similarly situated under | § | |
| 29 U.S.C. § 216(b), | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:16-CV-0662-D |
| VS. | § | |
| | § | |
| MAGIC AUTO TOUCH UP, INC., | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Sergio Leal ("Leal")[1] sues defendants Magic Touch Up, Inc. ("Magic Touch"), Charles R. White, Jr. ("Charles"), and James B. White ("James") for unpaid overtime pay under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendants move for summary judgment on the ground that Leal is exempt from the FLSA's overtime requirement under 29 U.S.C. § 207(i), and Leal cross-moves for partial summary judgment that Charles and James were his employers and that he is *not* exempt under § 207(i). For the following reasons, the court denies defendants' motion and grants in part and denies in part Leal's motion.

---

[1] Although Leal filed this lawsuit as a collective action, he has not moved for conditional certification, and he appears to be pursuing this lawsuit only on his own behalf.

I

Defendant Magic Touch is an automotive body repair business that employed Leal as a paint prepper from February 19, 2015 until March 4, 2016.[2]  For the first three months of Leal's employment, Magic Touch paid him $16 per hour for each of the first 40 hours he actually worked during each workweek and overtime pay at the rate of $24 per hour (1½ times his hourly wage) for any overtime hours he actually worked.  In this lawsuit, Leal does not seek any damages for the period from February 19, 2015 until April 30, 2015.

Beginning on April 30, 2015 and continuing until Leal's employment ended on March 4, 2016, Magic Touch compensated Leal using three different compensation systems that were allegedly based on commissions paid for "flag hours" earned.  According to defendants, flag hours (also known as "booked hours") are the estimated labor hours included in each estimate or repair order for Magic Touch's customers.  Flag hours "have nothing to do with the number of hours actually spent by a commissioned employee performing a particular service," but are, instead, a predetermined estimate calculated using a software program.  Ds. 8/24/17 Br. 7.[3]

---

[2]Because both sides move for summary judgment, the court will recount the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, will do so favorably to the side who is the summary judgment nonmovant in the context of that evidence.  *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

[3]For example, if a customer accepted an estimate or repair order indicating that he would be paying for six paint labor hours, and a commissioned employee performed paint prep work on that customer's automobile, the employee would be credited with six flag

Defendants contend that under Magic Touch's first commission plan ("First Commission Plan"), which was in effect from May 1, 2015 until early 2016, each of the first 100 flag hours in a two-week period credited to Leal was paid at the hourly flag rate of $12.80 and every additional flag hour credited to Leal during that same two-week period was paid at the hourly flag rate of $3.50.  Leal's pay stubs indicate that, under the First Commission Plan, he earned $1,280 (shown as "salary") during each two-week pay period and also earned an additional amount (shown as "commission") ranging from $441.00 at the low end to $1,086.75[4] at the high end.  Leal contends that Magic Touch guaranteed that he would earn at least $1,280 during each two-week pay period.

In early 2016, Magic Touch changed to a team commission.  Under this plan ("Second Commission Plan"), Leal was teamed with a painter and two other paint preppers, each of whom would receive a portion of the team's commissions that were calculated by crediting the team with the flag hours that had been estimated and charged to the customers whose automobiles the team prepped and painted.  Team commissions were paid as follows: 40%

---

hours, regardless of the actual amount of time it took him to perform the paint prep work.

[4]Leal's October 16, 2015 pay stub indicates that he was paid $2,095.85 in "Commission."  It is unclear, however, whether Leal actually received this amount.  *See* Ds. 8/24/17 App. 54 ("Paycheck Details" indicating net pay for the October 1, 2015 to October 14, 2015 pay period of -$2408.31) and *id.* at 55 (October 16, 2015 pay stub showing "Commission" of $815.85 for the October 1, 2015 to October 14, 2015 pay period).  Similarly, Leal's October 30, 2015 pay stub indicates that he was paid $2,366.75 in "Commission," but for the same reasons, it is unclear whether Leal actually received this amount.  *See id.* at 57 ("Paycheck Details" indicating net pay for the October 15, 2015 to October 28, 2015 pay period of -$2617.86) and *id.* at 58 (October 30, 2015 pay stub showing "Commission" of $1,086.75 for the October 15, 2015 to October 28, 2015 pay period).

to the painter, and 20% to each of the three paint preppers, one of whom was Leal.  When Magic Touch hired a second painter, it replaced the Second Commission Plan with a new commission plan ("Third Commission Plan").  The Third Commission Plan was similar to the Second Commission Plan, except that each team consisted of one painter (who was paid 60% of the team commissions), one paint prepper (who was paid 30% of the team commissions), and one buffer (who was paid 10% of the team commissions).

Magic Touch terminated Leal's employment on March 4, 2016.  A few days later, Leal filed this lawsuit against Magic Touch, Charles, and James for unpaid overtime under the FLSA.[5]  Leal contends that, from May 1, 2015 through March 4, 2016, he worked an average of 45 to 55 hours per week but was not paid at the proper rate for overtime hours worked (i.e., more than 40 hours per week), as the FLSA requires.

Defendants move for summary judgment on Leal's FLSA overtime claim, contending that he falls within the 29 U.S.C. § 207(i) exemption from the FLSA overtime requirements.  Leal cross-moves for partial summary judgment establishing that Charles and James were his employers and that he was not an exempt employee under § 207(i).

## II

When a summary judgment movant will not have the burden of proof on a claim at trial, the movant can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim.  *See Celotex Corp. v. Catrett*,

---

[5]In his complaint, Leal also sued Magic Auto Touch Up, Inc., but he has omitted this defendant from his amended complaint.

477 U.S. 317, 325 (1986).  Once the movant does so, the nonmovant must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory where the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

To be entitled to summary judgment on a claim or defense for which the movant will have the burden of proof at trial, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J .) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

- 5 -

III

A

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This overtime requirement does not apply, however, to an employee who falls within one of the exemptions that the FLSA provides. One such exemption is found in § 207(i), which exempts an employee of a "retail or service establishment" if "the regular rate of pay of such employee is in excess of one and one-half times" the federal minimum wage, and "more than half [the employee's] compensation for a representative period (not less than one month) represents commissions on goods or services." *Id.*

Defendants contend that they are entitled to summary judgment on Leal's FLSA overtime claim because Magic Touch's compensation plan satisfies the § 207(i) exemption. FLSA exemptions are "construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption." *Roche v. S-3 Pump Serv., Inc.*, 154 F.Supp.3d 441, 446 (W.D. Tex. 2016) (citing *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014)). An employer "must prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 581 (5th Cir. 2013). Accordingly, to be entitled to summary judgment on Leal's FLSA claim based on the § 207(i) exemption, defendants must establish each of

- 6 -

the following essential elements beyond peradventure:

> (1) the store in which the employees work is a retail or service establishment; (2) the employer pays the employees a regular rate of one and one-half times the federal minimum wage for each hour they work; and (3) the employees receive more than half of their compensation in the form of commissions earned from the sale of goods or services.

*Thomas v. Bob Mills Furniture Co.*, 2016 WL 1464636, at *2 (W.D. Tex. Apr. 13, 2016) (citations omitted).

## B

The court begins its analysis by considering whether defendants have established beyond peradventure that Leal received more than half of his compensation in the form of commissions earned from the sale of goods or services.

## 1

Section 207(i) provides, in pertinent part, that "all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee." 29 U.S.C. § 207(i). The statute does not define "commission" or "bona fide commission rate." *Pittman v. McClain's R.V., Inc.*, 2013 WL 12139092, at *8 (E.D. Tex. June 12, 2013) (citing *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001)). "The Fifth Circuit has not yet spoken on what constitutes a bona fide commission plan." *Crawford v. Saks & Co.*, 2016 WL 3090781, at *5 (S.D. Tex. June 2, 2016). Courts in other districts have noted that, "[b]y requiring that a commission rate is bona fide, Congress

apparently envisions a smell test, one that reaches beyond the formal structure of the commission rate and into its actual effects and the purpose behind it." *Lee v. Ethan Allen Retail, Inc.*, 651 F.Supp.2d 1361, 1366 (N.D. Ga. 2009) (internal quotation marks omitted) (quoting *Erichs v. Venator Grp., Inc.*, 128 F.Supp.2d 1255, 1260 (N.D. Cal. 2001)).   In *Casanova v. Gold's Texas Holdings Group, Inc.*, 2016 WL 1241548, at *8 (W.D. Tex. Mar. 23, 2016), the court distilled the following non-exclusive factors that courts outside of the Fifth Circuit have used to determine whether a plan is a bona fide commission plan:

> First, a bona fide commission is either a percentage or proportion of the ultimate price passed on to the consumer. Second, a bona fide commission is decoupled from actual time worked, so that there is an incentive for the employee to work more efficiently and effectively.  Third, the type of work is such that its "peculiar nature" does not lend itself to a standard eight-hour work day.  Fourth, the compensation system must not offend the purposes of the FLSA.

*Id*. (citations omitted); *see also Crawford*, 2016 WL 3090781, at *5 (citing with approval factors distilled in *Casanova*).   "No factor appears dispositive in the case law, but the first two seem to carry the most weight." *Crawford*, 2016 WL 3090781, at *5 (quoting *Casanova*, 2016 WL 1241548, at *8).

2

Defendants contend that all of the pertinent factors that courts have considered in determining whether a plan is a bona fide commission plan are present in Magic Touch's commission plans.  They posit, first, that there is proportionality between commissions and customer pricing: paint preppers were paid a commission based on the number of booked

- 8 -

hours for which the customer was charged (i.e., commissions represented a share of the labor component charged to the customer); Magic Touch's compensation plans provided performance-based incentives for employees to increase their income (by paying employees for "booked hours," employees had the incentive to work faster and could earn more money than if they were paid an hourly rate to perform the task); the flag hours assigned to a service were unrelated to the actual number of hours worked by the employee; the faster Leal worked, the more he earned because his commission was based, not on the total number of actual hours he put in on the job, but on the total number of flag hours times his hourly rate; and because Leal's commissions were decoupled from the actual time he worked, there was clearly an incentive for him to work more efficiently and effectively.

Defendants maintain, second, that Magic Touch's compensation plans tied Leal's compensation to the customer demand or quantity of sales because, without customer demand for car repairs, there would be no compensation at all for the paint prepper.

Defendants contend, third, that plans like Magic Touch's compensation plans are common in the industry.

Leal responds that, because under the First Commission Plan (in effect from April 30, 2015 through January 20, 2016) his "flag rate" dropped drastically after he completed the first 100 hours of work during a pay period, he had no incentive to be more productive.  He posits that, because under the First Commission Plan defendants intended a portion of his compensation (i.e., the first 100 flag hours) to be fixed and unchanging week to week, regardless of how busy or slow business was, the First Commission Plan is similar to a

system described in 29 C.F.R. § 779.416(c)[6] as being "an example of a commission plan which would *not* be considered a bona fide one," P. 9/14/17 Br. 17 (ellipses, internal quotation marks, and citation omitted), and is not sufficiently tied to customer demand or quantity of sales. Regarding the team-based compensation plans, Leal argues that these plans did not take into consideration the ratio between the hours worked by a particular employee on a job and the total hours worked on that same job by the team to which they were assigned. In sum, Leal contends that

> due to the fluctuating "flag rates" paid to Plaintiff, the diminishing returns built into Defendants' compensation system from April 30, 2015 through January 20, 2016, and the percentage structure of the team-based commission system in place from January 21, 2016 to March 4, 2016, there are at the very least genuine issues of material fact regarding whether or not Plaintiff was paid a "bona fide commission rate" for his work for the Defendants from April 30, 2015 through March 4, 2016.

*Id.* at 20.

In reply, defendants contend, *inter alia*, that Leal's own testimony establishes that he was compensated entirely by commission after April 30, 2015. They point to Leal's

---

[6]29 C.F.R. § 779.416(c) provides:

> [a] commission rate is not bona fide if . . . the employee receives a regular payment constituting nearly his entire earnings which is expressed in terms of a percentage of the sales which the establishment or department can always be expected to make with only a slight addition to his wages based upon a greatly reduced percentage applied to the sales above the expected quota.

deposition testimony that, beginning May 1, 2015, he was compensated based on the jobs he completed and the points he got rather than on the hours he worked; that the $1,280 Leal received for the first 100 flag hours was not a "guaranteed salary"; that even though Leal testified that he would receive $1,280 if he did not work 100 hours in a two-week pay period, it is undisputed that he never worked fewer than 100 flag hours in a two-week pay period, and, if he had, he would still have been paid commissions on the flag hours he worked, and the difference would have been paid separately; that the appearance of commissions on Leal's pay stubs labeled as "Salary" or "Regular" wages has no legal significance; and that the undisputed evidence shows that the first $1,280 Leal earned in every two-week pay period under the First Commission Plan was earned based upon the 100 flag hours he admitted he was credited with, not the actual hours.

3

The court concludes that there is a genuine issue of material fact[7] at least with respect to the question whether more than half of Leal's compensation under the First Commission

---

[7]Although the question whether a particular payment constitutes a commission under the FLSA exemption "is a question of law to be determined in light of the characteristics of the specific compensation system at issue," *Cantu-Thacker v. Rover Oaks, Inc.*, 2009 WL 1883967, at *4 (S.D. Tex. June 30, 2009) (citing *Klinedinst*, 260 F.3d at 1254; *Mechmet v. Four Seasons Hotel Ltd.*, 825 F.2d 1173, 1175 (7th Cir. 1987)), the characteristics of the specific compensation system are themselves at issue, thus precluding the court from deciding as a matter of law whether payments under the First Commission Plan constituted commissions.

Plan represents commissions on goods or services.[8]

Several courts have held that compensation schemes that use a "flat rate" system under which employees are compensated based on the number of "flag hours" completed (as opposed to the number of hours actually worked) constitute bona fide commission plans for purposes of § 207(i). *See, e.g., Yi v. Sterling Collision Ctrs., Inc.*, 480 F.3d 505, 509-10 (7th Cir. 2007) (exemption applied where compensation determined by multiplying the number of booked hours for the job by the ratio of the team member's actual hours worked to the total hours worked by the team, and then by a wage per booked (not actually worked) hour, based on the skill or quality of the individual team member); *Klinedinst*, 260 F.3d at 1256 (noting that "[p]ayments of between $12 and $15 per flagged hour provide incentives for employees to work efficiently and effectively to the benefit of the employer, who may then take on more customers at a greater profit margin, and the employee, who reaps the benefits of increased flag hours regardless of the actual amount of hours worked," and holding that plaintiff's flat rate wages constitute a "commission."); *Pittman*, 2013 WL 12139092, at *11 (holding that flag rate system for service technician constituted "bona fide commission rate" where "[a]ll flat-time employees' compensation would . . . be tied to customer demand, the plan would provide performance-based incentives for the employee to increase his or her

---

[8]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

income, and there would be proportionality between the value of the goods or services sold and the rate paid to the employee."). In fact, the Seventh Circuit recognized in *Yi* that the flat rate system of compensation used by the defendants was "industry-wide, and of long standing," noting:

> [i]t is possible for an entire industry to be in violation of the [FLSA] for a long time without the Labor Department noticing. But a more plausible hypothesis is that the auto repair industry has been left alone because the character of its compensation has been recognized for what it is—a bona fide commission system.

*Yi*, 480 F.3d at 510-11. None of these cases, however, involved a compensation scheme under which the employee was guaranteed that he would be compensated each pay period for a set number of "flag hours" at a certain rate, with any additional hours being compensated at a sharply decreased rate.

Viewing the evidence favorably to Leal as the summary judgment nonmovant, the court concludes that there is a genuine issue of material fact as to whether all of Leal's compensation under the First Commission Plan constituted commissions paid pursuant to a bona fide flat-rate commission plan, or whether part of Leal's compensation (exceeding 50%) constituted instead a fixed salary that was not based on a bona fide commission rate. Leal testified at his deposition that he was required to complete at least 100 flag hours during a pay period in order to earn his check, that all hours that exceeded the first 100 flag hours worked in a pay period would be "extra pay," and that, if he completed fewer than 100 flag

hours of work in a pay period, he would still be paid the $1,280 salary.[9]   P. 8/24/17 App. 32-

33.   Viewing the evidence favorably to Leal, the court holds that a reasonable trier of fact

could find that a $1,280 guaranteed salary suggests that at least part of Leal's paycheck was

not based on a bona fide commission rate.

Additional evidence in the record supports the reasonable conclusion that the $1,280

Leal earned during each pay period was a fixed salary rather than a commission.   Defendants

contend that although the $1,280 labeled as "salary" on Leal's pay stubs dated May 15, 2015

through December 24, 2015 constituted commissions for the first 100 flag hours of work Leal

completed during a two-week period, the pay stubs themselves reflect that this amount

constituted a "salary" payment for 80 hours of work at a rate of $16 per hour.   Defendants

have offered a plausible explanation for the terminology Magic Touch used (i.e., it wanted

its employees to be able to easily distinguish the payments they were receiving at the higher

flag commission rate from the payments at the lower $3.50 flag commission rate).

Nevertheless, a reasonable trier of fact could find from Leal's pay stubs that Magic Touch

viewed the sum of $1,280 as a guaranteed base salary rather than a commission payment on

its employees' first 100 flag hours.

In addition, while the amount identified on Leal's pay stubs as "Commission" varied

from week to week, the $1,280 Leal was paid for each two-week pay period remained

---

[9]Defendants contend that this testimony contradicts Leal's prior testimony that "after the system changed on May 1st, [he] started getting paid based not upon the hours [he] worked but based upon the jobs [he] completed and the points [he] got."  Ds. 9/14/17 App. 29.  The court disagrees that the two statements are inconsistent.

constant and is similar in amount to what he earned before Magic Touch implemented the First Commission Plan.  At least one court has held under similar circumstances that a genuine issue of material fact existed on the question whether a newly-implemented commission plan constituted a "bona fide commission" plan for purposes of § 207(i) when its effect was merely to replicate an earlier plan not based on commissions.  *See, e.g., Erichs*, 128 F.Supp.2d at 1261 (holding there was fact issue whether plan was bona fide commission play where "at the time it instituted the Plan, [defendant] allegedly promised to pay managers at least their previous salary level even if the computation of commissions under the Plan fell below that amount, [suggesting] an intent by defendant to replicate through a new form the results from the apparently legally nebulous old plan, thus raising a factual question about defendant's good faith.").

With the possible exception of two paychecks,[10] the $1,280 labeled as "salary" on Leal's pay stubs during the First Commission Plan constitutes more than half of Leal's compensation.  Because there is a genuine fact issue regarding whether the $1,280 constitutes "earnings resulting from the application of a bona fide commission rate," defendants have failed to establish beyond peradventure that the exemption in 29 U.S.C. § 207(i) applies to Leal's earnings under the First Commission Plan.

---

[10]*See supra* note 4.

4

Leal moves for partial summary judgment on his FLSA claim, contending, for largely the same reasons that he opposes defendants' summary judgment motion, that Magic Touch's method of payment during the period from April 30, 2015 through January 20, 2016 does not satisfy the requirements necessary for him to be exempt from overtime pay under 29 U.S.C. § 207(i).  Although the court has recounted above some of the evidence that would enable a reasonable trier of fact to find that the First Commission Plan did *not* constitute a bona fide commission plan, other evidence in the record[11]—including, for example, Leal's own testimony that he was compensated based on the jobs he completed rather than on the hours he worked—suggests that the First Commission Plan *was* a bona fide commission plan. Accordingly, because there is a genuine issue of material fact regarding whether more than half of Leal's compensation under the First Commission Plan represents commissions on goods or services, the court denies Leal's motion for partial summary judgment on this ground.

C

Even if the court assumes that defendants have established beyond peradventure that Leal was compensated pursuant to a "bona fide commission rate" under the Second and Third Commission Plans, it nevertheless holds that defendants have not met their summary

---

[11]As the court has already noted, "[w]hen this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact."  *Valcho*, 658 F.Supp.2d at 812 n.8 (citing *Swicegood*, 2003 WL 22234928, at *17 n.25).

judgment burden with respect to the second requirement of 29 U.S.C. § 207(i): that Leal's regular rate of pay exceeded 1½ times the applicable minimum wage under 29 U.S.C. § 206 for all hours he worked during the relevant period.

1

Defendants contend that Leal's compensation, expressed as an hourly rate of pay, is derived by dividing the number of hours Leal actually worked per two-week pay period by his total compensation for the same two-week pay period; that the relevant period for purposes of this action was from April 30, 2015 through March 4, 2016; that the applicable federal minimum wage was $7.25 per hour at all times during the relevant period; that during the period Leal was paid commissions, his regular hourly rate of pay averaged more than $23.00, and during no two-week period when he was paid commissions was his rate of pay less than $17.50; and that because Leal's compensation, expressed as an hourly rate, in every two-week period he was paid commissions, always well exceeded $10.88 per hour, the second required element of the § 207(i) exemption has been met.

Leal responds that, although he was paid on a two week pay cycle, defendants are still required to prove that he was paid at least $10.88 per hour for each individual workweek that he worked overtime hours; that defendants have failed to present evidence of Leal's effective hourly rates on a week-by-week basis and instead impermissibly rely on grouping two work-week pay periods to reach the conclusion that Leal's effective hourly rate always exceeded $10.88 per hour for each workweek during the period from April 30, 2015 through March 4, 2016; that defendants were required to maintain and preserve records of Leal's regular

hourly rate of pay for any workweek in which overtime compensation was due; that the records defendants present and the calculations they provide for determining Leal's effective hourly rates average hours and pay over two week periods, which is explicitly prohibited by 29 C.F.R. § 778.104[12]; that defendants' method of calculation is particularly problematic in this case because Leal's flag rate dropped dramatically after he completed the first 100 flag hours of work in a two-week period, according to defendants' verison of how the First Commission Plan functioned, and Leal's pay for the second week of any two-week pay period was substantially less than that of the first week in any pay period that he completed much more than 100 flag hours of work; that the flag hour summary defendants present for the pay period from November 26, 2015 through December 9, 2015 reflects that Leal completed 321 flag hours of work that period but does not reflect which hours were completed in which week; and that defendants do not cite to any evidence—i.e., records of flag hours completed on a per-week basis—necessary to determine what Leal's actual week-by-week effective hourly rate was during the period from April 30, 2015 through March 4, 2016.

In reply, defendants contend, *inter alia*, that, contrary to Leal's suggestion, the case law and regulations do not require that they establish that Leal was paid in excess of $10.88 for each week during the pay period, and, in fact, the regulations (specifically, 29 C.F.R. §

---

[12]29 C.F.R. § 778.104 provides, in pertinent part: "The [FLSA] takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks."

778.120) expressly recognize exceptions to the weekly calculation where, as here, commissions earned cannot be attributed to a single workweek.

2

"The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Pittman*, 2013 WL 12139092, at *6.  Defendants have calculated Leal's regular rate of pay by dividing the total amount of payment Leal received for each two-week pay period by the total number of hours Leal actually worked during that pay period.  The U.S. Department of Labor regulations provide, however, that a "a single workweek" is the standard, and that averaging of hours over two or more weeks is not permitted.  *Id.* (citing 29 C.F.R. § 778.104; *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 2011 WL 883703, at *9 (D. Vt. Mar. 11, 2011); *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F.Supp.2d 886, 895 (S.D. Ohio 2003)).

Defendants argue that "the case law and regulations simply do not require that Defendants establish that Plaintiff was paid in excess of $10.88 per hour for each week during the pay period."  Ds. 9/28/17 Reply 8 (underlining omitted).  They cite *Jelus v. All Creatures Animal Hospital, Inc.*, 2016 WL 3074406 (S.D. Ohio May 27, 2016), in which the court noted that "[w]here an employer pays commissions at intervals spanning more than one week, several courts—including this one—have upheld the calculation of the regular rate by allocating total commissions among the weeks or hours in the pay period."  *Id.* at *3.  29

C.F.R. § 778.120 permits courts to deviate from the "single workweek" standard "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week." Defendants have not argued—much less established by a preponderance of the evidence—that it is not possible or practicable to calculate Leal's regular hourly rate of pay during the period he was compensated under the Second Commission Plan or Third Commission Plan on a weekly basis. Accordingly, even assuming that defendants had met their summary judgment burden with respect to the question whether more than half of Leal's compensation during the Second and Third Commission Plans constituted bona fide commissions, they have not met their heavy burden of establishing beyond peradventure that Leal's rate of pay during this period exceeded the applicable minimum wage.

IV

Leal moves for partial summary judgment on the employer status of Charles and James. Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit relies on the economic reality test when determining a party's status as an employer under the FLSA. *See, e.g., Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). Under the economic reality test, the court evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (citation and internal quotation marks omitted).

A party need not, however, establish each element in every case.  *Id.* at 357.  "The dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 251 (5th Cir. 2012) (citation and internal quotation marks omitted).  Moreover, "[t]he remedial purposes of the FLSA require the courts to define 'employer' more broadly than the term would be interpreted in traditional common law applications." *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989) (per curiam), *modifying* 861 F.2d 450 (5th Cir. 1988).

Leal contends that there is no genuine issue of material fact, and that, after applying the economic reality test set out in *Gray*, the evidence establishes that Charles and James were his employers.  It is undisputed that Charles founded, and is president of, Magic Touch. In support of his motion, Leal contends that Charles had the power to hire and fire Magic Touch's employees; was involved in hiring Leal and setting Leal's schedule and the terms of his employment with Magic Touch; was involved in setting Leal's rate and method of payment, particularly with regard to the alleged commission system; terminated Leal's employment with Magic Touch; had the authority to enter into contracts with vendors and customers; and had check writing authority on behalf of Magic Touch.  Leal contends that James (Charles's son) had the power to hire and fire Magic Touch's employees; was involved in hiring Leal and setting Leal's schedule and the terms of his employment; was Leal's supervisor; was responsible for running day-to-day operations at Magic Touch as well as compiling the "flag hours" completed by the employees at Magic Touch so that they could

be transmitted for payroll processing; was involved in the series of events that eventually led to Leal's termination; was the first supervisory employee of Magic Touch approached by Leal and other employees regarding the payroll matter that led to Leal's termination; and owns 48% of Magic Touch's stock. Defendants do not respond to Leal's motion for summary judgment on this issue.

Leal has the burden of establishing employer status for purposes of his FLSA claim. *See, e.g., Trevino v. Celanese Corp.*, 701 F.2d 397, 404-05 (5th Cir. 1983) (recognizing the burden to prove employer status is on the plaintiff). Because Leal will bear the burden at trial of proving that James and Charles were his employers for purposes of his FLSA claim, to be entitled to summary judgment on this issue he must establish James's and Charles's employer status "beyond peradventure." Defendants have not responded to Leal's motion on this issue. Although the court is not permitted to enter a "default" summary judgment, the court is allowed to accept the evidence adduced by Leal as undisputed. *See, e.g., Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.). Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]

Fed. R. Civ. P. 56(e)(2), (3).

Leal has established, under the economic reality test articulated in *Gray*, that Charles

- 22 -

and James were his employers for purposes of his FLSA claim.  Accordingly, the court grants

Leal's motion for partial summary judgment on this issue.

*   *   *

For the reasons explained, the court denies defendants' motion for summary judgment,

and it grants in part and denies in part Leal's motion for summary judgment.

**SO ORDERED**.

January 4, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE